BURR *v.* BEAVER DAM DRAINAGE DISTRICT.

Opinion delivered July 5, 1920.

1. CONSTITUTIONAL LAW—LEGISLATIVE EXERCISE OF JUDICIAL POWER.—Acts 1920, No. 222, creating a drainage district embracing certain described lands and approving assessments for benefits made under a prior organization which had been declared void by the court, is not void as being a legislative exercise of judicial power.

2. CONSTITUTIONAL LAW—DUE PROCESS—LAW OF THE LAND.—A legislative assesssment of benefits in a drainage district are not invalid as violating the due process and the law of the land clauses of the Constitution, though it afforded no opportunity to contest in the courts the justice of such assessment.

Appeal from Greene Circuit Court; *R. H. Dudley,* Judge; affirmed.

*Geo. A. Burr* and *Allen D. Stewart,* for appellants.

1.   Act 222, special act, is a legislative exercise of judicial power and is unconstitutional and void.  58 Ark. 117, 121-2.

2.   It attempts to validate assessments that are wholly void.  *Ib.;* 119 *Id.* 188; 86 *Id.* 1; 181 U. S. 324; *Ib.* 371, 396; 239 *Id.* 478; 216 S. W. 690.

3.   The assessments are unreasonable, arbitrary, oppressive and confiscatory.  216 S. W. 692 and *supra.* The special act violates the ''due process'' clauses of our State and United States Constitutions.

*Huddleston, Fuhr & Futrell,* for appellees.

1.   The act is valid.  ·The Legislature had the power to adopt as correct the assessments made by the commissioners as a reassessment by the Legislature.   83 Ark. 54; *Ib.* 344; 112 *Id.* 357; *Gibson* v. *Spikes,* 143 Ark. 270; 170 U. S. 45; 107 Ark. 292; 131 *Id.* 59; 48 *Id.* 370; 130 *Id.* 70; 133 *Id.* 380; 214 S. W. 23; 21 *Id.* 767; 215 *Id.* 255; 125 Ark. 325; 64 *Id.* 555; 86 *Id.* 109; 69 *Id.* 68; 59· *Id.* 513.

2.·  The only questions appellants could raise were those which relate to the correctness of the assessment. 134 Ark. 292; 137 *Id.* 587; 215 S. W. 656; 217 *Id.* 773; 220 *Id.* 455.  If· appellants had desired to attack the validity of special act 222, they should have filed suit in chancery within the proper time.

HART, J.  In each of these cases an appeal is prosecuted from the judgment of the circuit court dismissing the appeal of landowners from the decision of the commissioners of Beaver Dam Drainage District fixing certain ditch assessments against their lands.

The material facts are as follows:  Special act No. 578, creating Beaver Dam Drainage District, was approved April 1, 1919.  Acts of Arkansas, 1919.  Special, p. 752.  The Legislature convened in extraordinary session in October, 1919, and amended act 578 by adding to the district about 1,000 acres in Greene County and 2,200 acres in Randolph County.  See special act No. 143, approved October 18, 1919.

The plans for the construction of the improvement as provided in the act as amended were made, and an assessment of benefits was made by the commissioners as provided in the act. Appellants protested against the assessment of benefits on their lands and appealed from the finding of the commissioners to the circuit court as provided in the act. On December 8, 1919, in the case of *Booe* v. *Road Improvement Dist.*, 141 Ark. 140, this court adjudged all special acts passed at the extraordinary session of the Legislature held in September, 1919, to be void. A special session of the Legislature was again called in 1920, and on February 20, 1920, act No. 222 was approved. It reads as follows:

"Section 1. That section one (1) of act No. 578 of the Acts of the General Assembly of 1919, approved April 1, 1919, be amended to read as follows:

"Section 1. A drainage district is hereby created in Greene County and Randolph County, Arkansas, to embrace the following lands (Here follows description).

"Section 2. The territory embraced within said district was embraced within the limits of the district amended under act No. 143 of the General Assembly of Arkansas for the year 1919, entitled 'An Act to amend act No. 578,' entitled 'An Act Creating Beaver Dam Drainage District in Greene and Randolph Counties, Arkansas,' approved April 1, 1919, approved October 18, 1919, which has been declared void by the Supreme Court of Arkansas. The commissioners of said district had prepared plans for the improvement and had made an assessment of benefits; and said plans as filed, and as now on file with the circuit clerks of Greene and Randolph counties, are hereby approved as the plans of the district hereby created, and said assessment of benefits, as now on file with the circuit clerks of Greene and Randolph counties, is hereby ratified and confirmed and declared to be just, equitable, and proportionate, and it shall be the assessment of benefits for said district until a new assessment is ordered in the manner prescribed in this act.

"Section 3. That all laws and parts of laws in conflict herewith are hereby repealed. This act being necessary for the immediate preservation of the public health, peace and safety, an emergency is hereby declared, and it shall take effect and be in force immediately after its passage."

On March 1, 1920, a motion was filed and sustained in the circuit court to dismiss the appeal of appellants and, as grounds therefor, it was alleged that said appeal had been abated by the passage of special act No. 222.

It is earnestly insisted by counsel for appellants that special act No. 222 is a legislative exercise of judicial power, and on that account is unconstitutional and void. This question has already been decided adversely to appellants in the case of *Sudberry* v. *Graves,* 83 Ark. 344. There, as here, an assessment of benefits was made and the order of the court confirming the assessment reported by the viewers was attacked, and during the pendency of the suit the Legislature passed an act confirming and validating the assessments. The court held that this was a valid legislative adoption of the assessments and cured the want of notice to landowners of the time fixed for hearing the last report of the viewers. After discussing the question at length, the court concluded as follows: "In other words, the Legislature could, in the first place, have levied the assessment itself, subject only to the right of the assessed landowner to have an arbitrary abuse of that power reviewed by the courts (*Coffman* v. *Drainage District,* 83 Ark. 54), and it can therefore adopt as correct the assessments made by the viewers and county court, treating the act of adoption as a reassessment of the lands by the Legislature. We see no reason why the Legislature can not, if it has the power, in the first place, to determine for itself the proportionate amounts to be assessed against the lands in the district, determine now that the apportionment made by the viewers and confirmed by the county court was correct and assess them against the lands. Authority is not lacking to support this view."

In act No. 222, approved February 20, 1920, the court fixed the boundaries of the drainage district by a particular description of the lands within the district. In section 2, the Legislature recognized that act No. 143, passed at the special session called in September, 1919, had been declared void by this court. The Legislature further recited that the commissioners of the district had prepared plans for the improvement and had made an assessment of benefits. The Legislature also recognized that the plans were on file in the office of the circuit clerks in Greene and Randolph counties, and that the assessment of benefits was also on file in said offices. The assessment of benefits on file in the circuit clerks' offices in Greene and Randolph counties was expressly ratified and confirmed as just and equitable. Section 2 concludes with declaring that the same shall be the assessment of benefits for said district until a new assessment is ordered in the manner prescribed in the act. Thus it will be seen that no further hearing is contemplated on the assessments already made. On the contrary, they were expressly validated and confirmed until a new assessment was ordered in the manner provided by the act.

It is earnestly insisted that an opportunity to contest the justice of the assessment is necessary to the validity of this act and to prevent it from being violative of "due process of law," and "the law of the land." Certainly, a judicial review of the assessment of benefits made by the commissioners is a means well suited and adapted to fixing assessments in accordance with actual benefits; but the validity of legislative assessments of benefits has become firmly established in this State. *Coffman* v. *St. Francis Drainage Dist.,* 83 Ark. 54; *Sudberry* v. *Graves,* 83 Ark. 344, and *Moore* v. *Board of Directors of Long Prairie Levee Dist.,* 98 Ark. 113; *Davies* v. *Chicot County Drain. Dist.,* 112 Ark. 357; *Gibson* v. *Spikes,* 143 Ark. 270. In the latter case the court said: "It is next insisted that the Legislature had no power to validate and confirm the assessments which

had theretofore been made by the commissioners. Unless the assessment was arbitrary, the Legislature had the power to sustain and validate it. The Legislature had the power in the first instance to have levied the assessment, subject only to the right of the landowner to have an arbitrary abuse of that power reviewed by the courts, and it can therefore adopt as correct the assessment by the commissioners as a reassessment by the Legislature.''

The court has held that where the statute provides a remedy for the landowner with regard to contesting his assessment, that remedy must be followed, and only those questions which relate to the correctness and equality of the assessments can be raised in the proceeding. *Mo. Pac. Rd. Co.* v. *Conway County Bridge Dist.,* 134 Ark. 292; *C., R. I. & P. Ry. Co.* v. *Road Imp. Dist. No. 1, Prairie County,* 137 Ark. 587; *K. C. So. Ry. Co.* v. *Road Imp. Dist. No. 6, Little River County,* 139 Ark. 424; and *Reisinger* v. *Road Imp. Dist. No. 8, Crittenden County,* 143 Ark. 341. It does not follow, however, that the landowner is without remedy where the Legislature has fixed the assessments, or where the statute does not give the landowner the right to have reviewed in the courts his assessment where it is made by a board of commissioners or other body.

In *Coffman* v. *St. Francis Drainage District,* 83 Ark. 54, there was a legislative assessment of benefits, and it was held that the courts will interfere where the act of the Legislature is such an arbitrary abuse of the taxing power as would amount to a confiscation of property without benefit.

In *Bush* v. *Delta Road Imp. Dist. of Lee County,* 141 Ark. 247, the court held that, regardless of whether or not the act gave him the right to have his assessment reviewed in the court, the landowner would be entitled to relief at some stage of the proceedings upon proper allegations and proof that his land was not benefited, or that the proposed improvements taxed his land so high as to amount to a confiscation of it.

In *Coffman* v. *St. Francis Drainage Dist.*, 83 Ark.
54, and in *Monette Road Imp. Dist.* v. *Dudley*, 144 Ark.
169, in an opinion delivered May 24, 1920, and other
cases, the court has held that where the statute provided
no forum, the remedy of the landowner was in equity.

In *Norwood* v. *Baker*, 172 U. S. 269, the court held
(quoting from syllabus): ''The principle underlying
special assessments upon private property to meet the
cost of public improvements is that the property upon
which they are imposed is peculiarly benefited, and there-
fore that the owners do not in fact pay anything in ex-
cess of what they receive by reason of such improve-
ment.

The exaction from the owner of private property
of the cost of public improvement in substantial excess
of the special benefits accruing to him is, to the extent
of such excess, a taking, under the guise of taxation, of
private property for public use without compensation;
but, unless such excess of cost over special benefits be
of a material character, it ought not to be regarded by
a court of equity, when its aid is invoked to restrain
the enforcement of a special assessment.''

In *Houck* v. *Little River District*, 239 U. S. 254, 262,
in discussing the question, the court said: ''The Legis-
lature, unless restricted by the State Constitution, can
create such districts directly, or, as in this case, it may
provide for their institution through a proceeding in the
courts in which the parties interested are cited to ap-
pear and present their objections, if any. The propriety
of a delegation of this sort was a question for the State
alone. And, with respect to districts thus formed,
whether by the Legisature directly or in an appropriate
proceeding under its authority, the Legislature may it-
self fix the basis of taxation or assessment, that is, it
may define the apportionment of the burden, and its ac-
tion can not be assailed under the Fourteenth Amend-
ment unless it is palpably arbitrary and a plain abuse.
These principles have been established by repeated deci-
sions.''

In the case of *Myles Salt Company, Ltd.* v. *Iberia District*, 239 U. S. 478, the court held that the action of the local administrative body in including land within a drainage district which is palpably arbitrary, such inclusion not being for the purpose of benefiting such lands directly, but for the purpose of obtaining revenue therefrom, amounts to deprivation of property without due process of law under the Fourteenth Amendment of the Constitution of the United States.

Other questions are raised by counsel in their brief, but, inasmuch as, under the authorities cited above, the only question which could have been considered on an appeal from the decision of the commissioners fixing the assessment would be the validity of such assessments, it is not now necessary or proper to consider such other matters.

It follows that the judgment must be affirmed.