SLOAN *v.* VILLAGE CREEK DRAINAGE DISTRICT.

Opinion delivered November 1, 1926.

1. DRAINS—REVIEW OF ASSESSMENTS ON APPEAL.—On appeal from judgments of the circuit court assessing the benefits from a drainage improvement, review of the testimony on appeal to the Supreme Court is limited to the question of the legal sufficiency of the evidence, and not to the weight thereof.

2. DRAINS—ASSESSMENT—SUFFICIENCY OF EVIDENCE.—Assessment of the benefits of improvements resulting from a lowering of the bed of a creek to prevent overflow *held* sustained by evidence.

3. DRAINS—ASSESSMENT OF BENEFITS.—The assessment of benefits for drainage improvements is a matter of estimate and forecast, and not one of absolute certainty.

Appeal from Lawrence Circuit Court, Western District; *Dene H. Coleman,* Judge; affirmed.

*Eugene Sloan, Cunningham & Cunningham, H. L. Ponder,* for appellant; *O. C. Blackford* and *Eli Thornburgh, pro se.*

*W. M. Ponder, W. A. Jackson, W. P. Smith* and *G. M. Gibson,* for appellee.

McCULLOCH, C. J. The improvement district involved in this controversy was created by special statute enacted by the General Assembly at the extraordinary session of 1920, which authorized the construction of a drainage system in the area described in Lawrence County, and the imposition of taxes upon benefits in order to raise funds to pay for the improvement. The district embraces nearly 70,000 acres of land, and the authorized plan for the improvement contemplates the construction of a main ditch, or canal, from twenty to seventy-five feet in width, through the channel of Village Creek, for a distance of about twenty-two miles. The

plan also contemplates the construction of six lateral ditches, from twelve to twenty feet in width, through certain creeks or bayous which empty into Village Creek. One of the laterals is called Little Village, another Coon Creek, another Turkey Creek, another Lake Pond, another Lindsay Creek, and the other the White Oak lateral. The statute provides for an assessment of benefits to be made by the commissioners of the district, and, when the list is filed, notice is given and an opportunity for a hearing in the county court. The statute gives aggrieved owners of property in the district the right of appeal to the circuit court from the decision of the county court.

The commissioners completed their assessment of benefits and filed the list with the county court, and notice was given and a hearing was had in that court. There are about eight thousand calls, or items, in the assessment list, and there were numerous protests. The maximum assessment on lands found to derive the greatest benefit was twenty-four dollars per acre, and the minimum, one dollar and fifty cents per acre. The lands bearing the lowest assessment were those which did not overflow from the creek, but, according to the testimony adduced in the case, received general benefit on account of the locality being drained.

The county court approved the assessments made by the commissioners, with a few exceptions, but forty-eight owners of land appealed to the circuit court, and there was a trial anew in that court. In the trial in the circuit court, the assessments of benefits were again approved, with one or two exceptions. Twenty-four of the protesting landowners appealed to this court.

It is contended by counsel for appellee that some of the appeals should be dismissed—two of them for the reason that the transcripts were not lodged in time, and numerous others for the reason that the rules of the court have not been complied with in filing abstracts. We deem it unnecessary to pass upon the question raised on the motion to dismiss the appeal, for the reason that

we have reached the conclusion that, even if all the appeals had been perfected and duly prosecuted, the judgment in each instance must be affirmed.

Each of the protests challenges the correctness of individual assessments; most of the protestants, however, being the owners of more than one tract, some of them numerous tracts. The questions as to the correctness of the assessment on separate tracts were heard consecutively, but each assessment was considered separately for the purpose of determining whether or not the assessment was correct. It was conceded in the trial below that all of the lands, with possibly two or three exceptions, were benefited to some extent and should be taxed, but the assault on the correctness of the assessments relates to the amount of the assessments. The decision of the case in this court turns upon the character of the review which we give, and that question has been settled by prior decisions of this court. It will be remembered that the statute creating the district authorizes an appeal to the circuit court, and the case is heard there *de novo*. We have often decided that the rule that limits our review of the testimony in trials at law to the question of the legal sufficiency of the evidence and not to the weight of the evidence applies to cases of this kind, involving the correctness of assessments of benefits in improvement districts. *St. L. & S. F. R. Co.* v. *Fort Smith & Van Buren Bridge District*, 113 Ark. 492, 168 S. W. 1066; *Oates* v. *Cypress Creek Drainage District*, 135 Ark. 149, 205 S. W. 293; *Rysinger* v. *Road Imp. Dist.* 143 Ark. 341, 220 S. W. 455; *Gibson* v. *Lawrence County*, 155 Ark. 319, 244 S. W. 341; *Tucker Lake Reclamation District* v. *Winfrey*, 160 Ark. 205, 254 S. W. 460.

It would serve no useful purpose and would unduly extend this opinion to discuss in detail the testimony in regard to each of the separate tracts of land involved in these protests. In each instance there was testimony of considerable weight introduced by the appellants in regard to their several tracts of land, tending to show that the lands would be benefited, some of them not at

all, and others to a considerably less extent than indicated in the assessment lists filed by the commissioners. If we were at liberty to review the testimony for the purpose of determining its weight, there are some instances in which the preponderance would appear to be against the finding of the trial court. But we are of the opinion that in each instance there is legally sufficient evidence to support the finding. Appellees introduced, as witnesses, some of the commissioners who made the assessments, and the engineer of the district, and also owners of large amounts of property in the district, and their testimony tended to show that there was more or less benefit to all of the lands in the district. It appears from the testimony that Village Creek is a wide, sluggish stream, which overflows its low banks, and, during the dry time in the summer, does not flow a stream of water, but is reduced to pools. The plan is to lower the bed of the channel of this creek so as to lower the water level, and not only carry off the water from the lands which overflow, but to afford what the witnesses termed underground drainage, and that in this way lands which do not overflow will receive great benefit. It appears that in many instances tracts of land of different owners are partly subject to overflow, but are mostly above overflow. The land lies in ridges, and is interspersed with low swales, and for this reason some of the owners claim that they get very slight benefit, whilst the testimony adduced by the commissioners tends to show that all of the lands, even the ridges not subject to overflow, will be benefited from underground drainage.

As we have often said, the matter of assessment of benefits is largely one of opinion, about which men differ. It is a matter of estimate and of forecast, and not one of absolute certainty. We are therefore unable to say that there is an entire absence of testimony to support the finding of the trial court upon either of the tracts of land involved in the controversy.

The judgment of the circuit court is therefore affirmed.